**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 20 2003**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LISA Y. JONES,

       Plaintiff - Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant - Appellee.

No. 02-3355

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 01-CV-2017-KHV)**

---

Steven D. Steinhilber, The Accurso Law Firm, Kansas City, Missouri for the Plaintiff-Appellant.

Christopher Allman, Assistant United States Attorney (Eric F. Melgren, United States Attorney, with him on the brief), Kansas City, Kansas for the Defendant-Appellee.

---

Before **KELLY** , **LUCERO** , and **McKAY** , Circuit Judges.

---

**LUCERO** , Circuit Judge.

      Lisa Jones brought this suit against her former employer, the Social

Security Administration ("SSA"), alleging that its failure to promote her was

based on racial discrimination, that the SSA was a racially hostile work environment, that the SSA retaliated against her for being outspoken on racial issues and filing a complaint with the Equal Employment Opportunity Commission ("EEOC"), and that she was constructively discharged, all in violation of Title VII, 42 U.S.C. § 2000e et seq. In response to the SSA's motion for summary judgment, Jones moved to strike the SSA's declarations in support of its summary judgment motion. The district court granted summary judgment in favor of the SSA on the Title VII claims and denied Jones' motion to strike. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

Lisa Jones, an African-American woman, began working at the Kansas City, Kansas, Office of Hearings and Appeals ("KCK/OHA"), a division of the SSA, in 1990. Having started as a hearing clerk, by 1997 she had been promoted to a legal assistant position for Administrative Law Judge ("ALJ") Keith Sickendick. In 1997, Jones applied for a promotion to a paralegal-specialist position, three of which became available that year. A temporary position slated to last for approximately one year, the job involved drafting opinions for ALJs.

Defined by the 1996 collective bargaining agreement with the American Federation of Government Employees, the somewhat complicated application process for the available positions required applications to be screened initially by

a four-person assessment panel. Using a scoring system based on criteria established by the SSA's national office, the assessment panel evaluated the applications, scored them, and compiled a "well-qualified" list based on the scores. Applications were awarded points based on formal education, in-house training, awards, communication skills, medical knowledge, legal knowledge, and SSA program knowledge. When Jones applied for the paralegal-specialist position, fourteen applicants were selected for the well-qualified list; Jones tied for the sixth highest score among the fourteen. The six applicants whose scores were above or equivalent to Jones' score were Caucasian.

After the initial screening process, the panel sent the list of well-qualified applicants to Bruce Haydon, the Supervisory Attorney Advisor, in alphabetical order and without the scores listed. Under the terms of the most recent collective bargaining agreement, Haydon was required to use his judgment to select the individuals who he thought best suited KCK/OHA's needs rather than to automatically select applicants on the basis of the scores given by the assessment panel.[1]

Haydon interviewed and evaluated each of the candidates, his evaluations

---

[1] This reflected a change from the previous collective bargaining agreement, under which the names and scores of the top applicants were forwarded to the selecting official, and unless a justification existed otherwise, he or she was <u>required</u> to select the highest scores to fill the positions.

focusing on their abilities to "get up to speed" in the new positions (3 R. at A0252), to interact with the ALJs for whom they would be writing opinions, and to draft the actual opinions. Based on his evaluations, Haydon selected Paula Florance, Janet Bayless, and Barbara Raposa for promotion to the paralegal-specialist positions. Each successful applicant had received a lower score than Jones from the assessment panel; each was a Caucasian woman. Upon discovering that she had not been offered one of the openings, Jones filed a racial discrimination complaint with the EEOC, alleging that the SSA's failure to promote her was due to race.

Jones claims that a number of incidents occurred shortly thereafter, the totality of which caused the KCK/OHA to become a racially hostile work environment. Following the filing of her complaint, Jones perceived that her assignments became larger and more complex than those given to white employees, and that they often reflected struggles that she faced in her personal life or contained language that she deemed racially offensive.

Jones also points to specific incidents as evidence of racial hostility. ALJ Sickendick, Jones' former supervisor, used the phrase "black and white" during an impromptu meeting near Jones' desk to describe the clarity of a written notice, which Jones perceived as an attempt to intimidate her. In a separate incident, Haydon brought a package of cupcakes featuring African-American and

Caucasian Barbie Doll characters in honor of the birthday of an employee named Barbara and presented Jones with a cupcake featuring an African-American Barbie Doll. Finally, Bayless bought a pre-manufactured goodbye card depicting Caucasian workers seated in an office and gave it to Jones when she left her employment. In December 1999, Jones gave notice to the SSA that she was voluntarily resigning; she ultimately left the SSA and returned to her former job in the military.

In district court, Jones brought claims under Title VII, 42 U.S.C. § 2000e et seq. alleging failure-to-promote, hostile work environment, retaliation, and constructive discharge. The SSA moved for summary judgment, and Jones moved to strike five of defendant's declarations submitted in support of summary judgment. Granting summary judgment to the SSA, the district court found that Jones failed to (1) present evidence sufficient to establish pretext on her failure-to-promote claim; (2) allege sufficient facts to support the inference of a hostile work environment; and (3) establish an adverse employment action with respect to a retaliation claim. The district court implicitly rejected the constructive discharge claim and denied Jones' motion to strike defendant's declarations. Jones appeals this judgment.

## II

We review a summary judgment grant de novo and apply the same legal

standard used by the district court.  McCowan v. All Star Maint., Inc., 273 F.3d 917, 921 (10th Cir. 2001).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c).   In conducting our review, "[w]e must draw all inferences in favor of the party opposing summary judgment."  O'Shea v. Yellow Tech. Servs., Inc., 185 F.3d 1093, 1096 (10th Cir. 1999).  We recognize that at the summary judgment stage "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  Foster v. AlliedSignal, Inc., 293 F.3d 1187, 1195 (10th Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  In this procedural posture, therefore, "our role is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate factfinder, to sustain her claim."  Id.

## A

Under the familiar three-step allocation of burdens of proof mandated by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a plaintiff alleging a failure-to-promote claim must initially establish a prima facie case, demonstrating that:  (1) she was a member of a protected class; (2) she applied for and was qualified for the position; (3) despite being qualified she was rejected; and (4)

after she was rejected, the position was filled. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1226 (10th Cir. 2000). If the plaintiff carries her burden of establishing a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action. Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1216 (10th Cir. 2002). This shifts the burden back to the plaintiff to proffer evidence that the employer's reason is pretextual. Id.

It is undisputed that Jones has established a prima facie case of race discrimination on her failure-to-promote claim. Her initial burden satisfied, the SSA must then provide a legitimate, nondiscriminatory reason for failing to promote Jones. At this stage, the SSA is required only to "explain its actions against the plaintiff in terms that are not facially prohibited by Title VII." EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1317 (10th Cir. 1992). Indeed, the SSA satisfies this step by asserting non-discriminatory reasons for hiring the successful applicants rather than Jones. Specifically, Haydon considered each of the successful applicants to be more likely to acclimate quickly to the duties of the new position and better able to interact with the ALJs for whom they would work. In addition, the position required the ability to draft decisions, and there is

evidence that Jones was not a skilled writer.[2]  Because these reasons are not

"facially prohibited by Title VII," Flasher, 986 F.2d at 1317, we conclude that the

SSA has articulated a legitimate, nondiscriminatory reason for failing to promote

Jones and has satisfied its burden.

Thus, we proceed to the third step of the McDonnell-Douglas framework.

Jones is required at this stage to counter the SSA's articulated non-discriminatory

reasons for failing to promote her with specific facts showing that the SSA's

reasons for its decision are pretextual or racially motivated.  See McDonnell

Douglas , 411 U.S. at 804  ; Bullington v. United Air Lines, Inc., 186 F.3d 1301,

1317 (10th Cir. 1999).  Summary judgment in favor of the SSA is warranted only

if Jones has "failed to produce any evidence from which a reasonable inference

could be drawn" that the SSA's proffered reasons were pretextual.        Foster , 293

F.3d at 1196.

Plaintiffs typically show pretext by revealing "such weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the

employer's proffered legitimate reasons for its action that a reasonable factfinder

could rationally find them unworthy of credence." Morgan v. Hilti, Inc., 108 F.3d

---

[2] Though the SSA does not mention Jones' writing skills specifically in its assertions of non-discriminatory reasons, Haydon stated in his affidavit that the main focus of paralegal-specialists is decision writing, and that therefore in making his promotion decisions he required some ability with decision writing.

1319, 1323 (10th Cir. 1997) (quotation omitted). Here, Jones asks us to draw an inference of pretext based on the fact that she received a higher score than the successful applicants at the assessment-panel stage of the application process and, therefore, was better qualified for the promotion than the successful candidates.

While we are willing to infer pretext when the facts assure us that the plaintiff is better qualified than the other candidates for the position, see Rea v. Martin Marietta Corp., 29 F.3d 1450, 1457-58 (10th Cir. 1994), we are not convinced by the circumstances of this case. To be sure, Jones had certain advantages over Florance, Raposa, and Bayless;[3] indeed, these advantages were reflected in her higher score at the screening panel stage. In our view, however, the higher assessment-panel score alone is not dispositive of pretext in this case.

To the contrary, the procedures required by the SSA's most recent collective bargaining agreement specifically required the assessment-panel scores to act as nothing more than a screening tool to separate the applicants into two distinct groups – those who were objectively qualified for the position and those who were not. In fact, the collective bargaining agreement specifically changed a provision from a previous agreement which had required that Haydon automatically pick the highest scoring applicants from the screening panel stage.

---

[3] Specifically, Jones was the only one of the four who had any graduate education, the only one who achieved a Bachelor of Science, and the only one who had a Paralegal-Specialist Certificate.

Thus, the sole purpose of the assessment-panel scores was to act as a source of initial division between qualified and unqualified applicants rather than as a spectrum through which qualified applicants could be compared to one another. Making this point especially forceful is the fact that under the collective bargaining agreement, the list of well-qualified applicants came to Haydon without any scores listed for any of the applicants. The SSA's promotion system, therefore, was not one of rote reliance on the scores calculated by the initial assessment panel. Rather, the new system consciously gave Haydon discretion to choose candidates from the group deemed well-qualified by the assessment panel based on specific employment needs.

Moreover, Jones' argument – that her higher assessment-panel score relative to the successful candidates demonstrates pretext – is somewhat self-defeating. Consider that Jones points to her assessment-panel scores as evidence of pretext in the SSA's decision not to promote her, essentially urging a procedure which would rely on those scores in making such decisions. Under such an approach, Jones would not have received the promotion. She did not receive the highest score from the assessment panel, nor did she receive one of the three highest scores. Rather, out of the fourteen people who made the well-qualified list, Jones' score was tied for sixth. That Jones would not have been promoted under the score-dominated system she urges to us undercuts the strength of her

argument significantly.

Thus, both the SSA's required procedures and Jones' actual score undermine her argument that her higher assessment-panel score demonstrates pretext on the part of the SSA. In addition to these factors, we recognize that "[o]ur role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments." Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Srvs., 165 F.3d 1321, 1329 (10th Cir. 1999). With that in mind, we typically infer pretext in these contexts only when the criteria on which the employers ultimately rely are entirely subjective in nature. See Garrett, 305 F.3d at 1218; Simms, 165 F.3d at 1330; Bauer v. Bailar, 647 F.2d 1037, 1046 (10th Cir. 1981) (concluding that while subjective criteria are not wrongful per se, "[o]bviously subjective decision making provides an opportunity for unlawful discrimination"). In this case, to the contrary, Raposa, Bayless, and Florance had rational basis advantages over Jones as candidates for promotion.

For example, each of the selected candidates had significantly more experience at the SSA than Jones, and such experience seems to us a reasonable criterion on which to base a decision to promote.[4] Moreover, each successful

---

[4]Jones had seven years of experience. Raposa had been at the SSA for eleven years, Florance for fifteen years, and Bayless for twenty-two years.

candidate had held specific jobs at the SSA that Haydon felt would enable new paralegal-specialists to grow more quickly into their new jobs and interact better with the ALJs under whose supervision they would work.[5]  Finally, it is undisputed that the paralegal-specialist position required some ability with decision-writing, and testimony in the record indicates that there was reason to doubt Jones' skills in this area.  Judge Sickendick, her former supervisor, stated in his deposition that when he tried to give Jones small writing tasks, she could not complete them adequately.  It is essential to consider writing ability when promoting candidates to positions which require the drafting of opinions for ALJs.

Consequently, we hold that Jones has not met the requirements necessary to establish pretext.  The evidence she presents is not "sufficient to raise a genuine doubt about Defendant's motivation," EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1200 (10th Cir. 2000), and thus we affirm the district court's grant of summary judgment to the defendants.

**B**

---

[5] Florance and Bayless had previously been Hearing Office Supervisors. Raposa had no experience as a Hearing Office Supervisor, but she had served in an interim position as a paralegal-specialist – the very position for which she was applying – during her career at the SSA and performed admirably by all accounts. Jones had no previous experience in either of those positions during her time at the SSA.

As to the racially hostile work environment claim, Jones is required to demonstrate that a rational jury could conclude "that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." O'Shea, 185 F.3d at 1097 (citations omitted). This requires plaintiffs to assert "more than a few isolated incidents of racial enmity." Bolden v. PRC Inc., 43 F.3d 545, 551 (10th Cir. 1994) (citations omitted). Courts attempting to make the determination of whether the environment is hostile must examine all of the circumstances alleged "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." O'Shea, 185 F.3d at 1098 (citation omitted).

Jones proffers the following evidence in support of her hostile work environment claim: (1) the SSA failed to promote her to the paralegal-specialist position; (2) Jones was assigned cases that involved personal issues in her life; (3) Haydon offered Jones a cupcake depicting an African-American Barbie Doll; (4) Bayless gave her a goodbye card which portrayed an office with only Caucasian workers; and (5) Judge Sickendick used the words "black and white" while standing next to Jones' desk.

We have already concluded that Jones did not demonstrate pretext on her failure-to-promote claim; her reiteration of the allegation in this context does not bolster her claim of hostile work environment. Jones also alleges that her case assignments changed to reflect her daughter's mental health issues, but it would have been impractical for her cases not to have reflected mental health problems; approximately ninety percent of the KCK/OHA caseload is made up of disability conditions, and about half of those claimants have mental conditions. Alternative and plausible explanations are advanced by the SSA for the cupcake, goodbye card, and "black and white" incidents. In context, these particular incidents do not appear to be founded in racial enmity; even were we to conclude otherwise, their isolated nature would not lead a rational jury to find them severe or pervasive enough to constitute a racially hostile environment.

Thus, viewed in its totality and in the light most favorable to Jones, the asserted evidence is not sufficient to survive summary judgment on the racially hostile work environment claim. We therefore affirm the district court's grant of summary judgment to the defendant on this ground.

## C

Turning to Jones' retaliation claim, she is required to demonstrate that (1) she was engaged in opposition to Title VII discrimination; (2) she was subject to an adverse employment action; and (3) a causal connection exists between the

protected activity and the adverse employment action. Sanchez v. Denver Public Schs., 164 F.3d 527, 533 (10th Cir. 1998).

Jones' retaliation claims can be separated into two distinct threads. First, she claims that she was outspoken on racial issues, and that the SSA retaliated against her outspokenness by failing to promote her to the paralegal-specialist position. While we accept her statement that she was outspoken on racial issues, and a failure-to-promote claim satisfies the second requirement of the prima facie case, Jones presents no evidence demonstrating that Haydon was aware of her outspokenness. As such, Jones fails to show a connection between her outspokenness and the decision not to promote her, thus failing the causation requirement of the prima facie case.

Claiming that the SSA retaliated against her for filing an EEOC complaint, Jones reiterates her allegations with respect to the hostile work environment claim. Similar to our discussion of that claim, we conclude that the Barbie Doll cupcake, greeting card, and "black and white" incidents do not rise to the level of adverse employment actions for the purposes of a retaliation claim.

As for Jones' complaints that her cases became less desirable following her EEOC complaint, she again fails on the second requirement of a prima facie case. Jones has two main complaints about her assignments. First, she alleges that they

began to reflect personal issues in her life.[6]  In addition, she began to notice that her case files generally seemed thicker, and so she assumed that her cases were more complex than those given to white employees.  While an increased workload might constitute an adverse employment action in some circumstances, Jones relies exclusively on generalized and unsubstantiated claims that do not rise to the level of an adverse employment action.

We conclude that Jones has not established a prima facie case of retaliation by the SSA, and that the SSA is entitled to summary judgment on that claim.

**D**

Constructive discharge occurs "when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign."  Sanchez, 164 F.3d at 534 (citations omitted).  Plaintiff advances subjective views in support of her allegations of constructive discharge that are substantially irrelevant to the inquiry, see Woodward v. City of Worland, 977 F.2d 1392, 1401 (10th Cir. 1992); she must demonstrate that objectively, she had "no other choice but to quit." Id. (citations omitted).

_____

[6] Jones objected to her case assignments in large part because they involved people with mental health issues, and her child had such issues.  However, it would have been quite difficult for the SSA not to have assigned cases to Jones that involved mental health problems given that approximately ninety percent of the KCK/OHA caseload involves disability benefits.

Jones reiterates the allegations discussed in detail above. Because we have dealt with these allegations and concluded above that they do not constitute violations of Title VII, we only repeat that even in the light most favorable to Jones, we cannot conclude that the conditions alleged made her office such a difficult place to work that a reasonable person would have felt compelled to resign. See Sanchez, 164 F.3d at 534.

**E**

Finally, Jones appeals the district court's denial of her motion to strike the declarations submitted by the SSA in support of its motion for summary judgment. At the summary judgment stage, we review a district court's evidentiary ruling for abuse of discretion. See Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc., 131 F.3d 874, 894 (10th Cir. 1997). Jones specifically alleges that the declarations are extensively argumentative, replete with conclusions, and full of statements lacking in personal knowledge. Acknowledging the difficulty in striking an entire affidavit, the district court instead relied on the declarations to the extent that they contained relevant and admissible material, ignoring inadmissible and irrelevant statements.

We find nothing in the record that suggests an abuse of discretion by the district court, or that it failed to ignore inadmissible hearsay or legal conclusions within the declarations as submitted to it. See Maverick Paper Co. v. Omaha

-17-

Paper Co., 18 F. Supp.2d 1232, 1234 (D. Kan. 1998) (because it is impractical to strike a submitted affidavit, the court may simply ignore inadmissible evidence rather than strike the affidavits).

## III

We **AFFIRM** the district court's grant of summary judgment.