**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 3 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MARTIN PRUITT, LUCRETIA
PRUITT, DAVID ELGIN, DANIEL
LLEWELLYN and CHERYL
LLEWELLYN,

        Plaintiffs-Appellants,

v.

COMCAST CABLE HOLDINGS,
LLC,

        Defendant-Appellee.

No. 03-1297
(Colorado)
(D.Ct. No. 00-N-1250)

## ORDER AND JUDGMENT[*]

Before **MURPHY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**O'BRIEN**, Circuit Judge.

Former and current subscribers of Comcast Cable Holdings, LLC's

("Comcast")[1] digital cable service filed suit claiming Comcast violated the 1984

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] During the pendency of this action, Appellee changed from AT&T Broadband, LLC, to Comcast Cable Holdings, LLC.

Cable Communications Privacy Act ("Cable Act"), 47 U.S.C. § 551, *et. seq.*, by retaining personally identifiable information in its cable converter boxes without notice or consent. In addition, two subscribers brought related state law claims alleging Comcast charged them for a service not supplied. The district court granted summary judgment in favor of Comcast on the federal claims, holding the information in the converter boxes was not personally identifiable information and dismissing the state law claims without prejudice. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**Background**

Martin Pruitt, Lucretia Pruitt, David Elgin, Daniel Llewellyn and Cheryl Llewellyn ("Appellants") are past or present subscribers of Comcast's digital cable service. To receive such service, subscribers must have a special converter box installed and attached to their telephone line. The converter boxes, manufactured by Motorola, transmit and store (1) pay-per-view purchase information, (2) system diagnostic information and (3) settop bugging information. Each converter box contains a code displayed in hexadecimal format indicating the date of a pay-per-view purchase and a source identifier for the pay-per-view channel. The converter box stores a maximum of sixty-four purchases. When total purchases exceed that number, the newest purchase information overwrites the oldest purchase. The converter box also contains a code (again

displayed in hexadecimal format) signifying the total number of purchases and payments generated through that particular box. Individual subscriber information is not contained within the converter box, but an identifying number known as a "unit address" allows Comcast to match the subscriber's purchases to its billing system. The billing system contains the name and address of the household member responsible for payment.

Appellants filed suit claiming Comcast violated the Cable Act by (1) storing personally identifiable information (47 U.S.C. § 551(e)) and (2) storing that information longer than necessary (47 U.S.C. § 551(a)). After reviewing cross motions for summary judgment, the district court held the coded information in the converter boxes was not "personally identifiable," and therefore declined to consider whether Comcast retained that information longer than necessary. Finding the federal questions resolved, the district court dismissed the Pruitts' state law claims without prejudice. This appeal followed.

**Discussion**

1.      Cable Act Claims

We review summary judgment *de novo* applying the same legal standard used by the district court. *Scofield v. TeleCable of Overland Park*, 973 F.2d 874, 878 (10th Cir. 1992).

> Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact.' . . . [We] draw all inferences in favor of the party opposing summary judgment, [recognizing] credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.

*Jones v. Barnhart*, 349 F.3d 1260, 1265 (10th Cir. 2003) (quoting Fed. R. Civ. P. 56(c)). This Court's role "is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate fact finder, to sustain [the] claim." *Id*. at 1265-66.

"In 1984, Congress enacted the Cable Act to establish national policy and guidelines for the cable television industry." *Scofield*, 973 F.2d at 876. The Cable Act creates a nationwide standard for the protection of subscriber privacy by regulating the collection, use, and disclosure by cable operators of personally identifiable information regarding cable subscribers. In particular, 47 U.S.C. § 551 "establishes a self-contained and privately enforceable scheme for the protection of cable subscriber privacy." *Id*. This section responds to "Congress' observation that: [c]able systems, particularly those with a 'two-way' capability, have an enormous capacity to collect and store personally identifiable information about each cable subscriber." *Id.* (quoting H.R. Rep. No. 934, 98th Cong., 2d Sess. 29 (1984)). "Subscriber records from interactive systems," Congress noted, "can reveal details about bank transactions, shopping habits, political contributions, viewing habits and other significant personal decisions." *Id.*

Although § 551 regulates cable company practices involving personally identifiable information, exceptions are provided where such information is necessary to render service to the subscriber, § 551(b)(2)(A), or to detect unauthorized reception of cable communications. 47 U.S.C. § 551(b)(2)(B). Even so, such subscriber information must be destroyed when it is no longer necessary for the purpose for which it was collected. 47 U.S.C. § 551(e). Further, § 551(a) of the Cable Act "establishes a set of subscriber notice requirements designed to inform subscribers of . . . the operator's information practices that affect subscriber privacy . . . ." *Scofield*, 973 F.2d at 876.

The heart of this dispute is whether the information stored within Comcast's converter boxes is personally identifiable information. "While the term is not affirmatively defined by the Act, § 551(a)(2)" defines what it is not. *Id.* It provides: "for purposes of this section, the term 'personally identifiable information' does not include any record of aggregate data which does not identify particular persons." 47 U.S.C. § 551(a)(2). "In addition, legislative history [suggests] that personally identifiable information would include specific information about the subscriber, or a list of names and addresses on which the subscriber is included . . . ." *Scofield*, 973 F.2d at 876 (quotation and citation omitted).

Appellants concede the information in the converter boxes does not

contain the name, address or any information regarding the customer. However, they maintain the unit address enables Comcast to identify a customer's viewing habits by connecting the coded information with its billing or management system. Because the information in any given converter box is not eradicated when it is recycled to another customer, they conclude the converter boxes contain personally identifiable information which may never be purged.

In granting summary judgment to Comcast, the district court distinguished the information in the converter boxes from that contained in the billing system. It noted the converter box code—without more—provides nothing but a series of numbers. We agree. Without the information in the billing or management system one cannot connect the unit address with a specific customer; without the billing information, even Comcast would be unable to identify which individual household was associated with the raw data in the converter box. Consequently, it is the billing system that holds the key to obtaining personally identifiable information, not the converter box. Appellants made no claim in their briefs or at oral argument that the collection of information in the billing system violates the Cable Act. Moreover, Comcast's privacy notice to subscribers clearly states the retention policies related to information in the billing system:

> Accounting and billing records are retained for ten years for tax and accounting purposes or until the relevant income tax years for which the document was created has been closed for income tax purposes and/or all appeals have been exhausted. Routine paper records

necessary to render or conduct legitimate business activities . . . are kept in accordance with the local cable company's voluntarily adopted document retention program. Paper records such as work orders and records of technical maintenance and service . . . are retained for three years. Subject to applicable law, records relating to involuntary disconnects are kept indefinitely by us or [our] affiliates . . . to facilitate collection and evaluation of creditworthiness and are updated as new information is added.

(Appellants' App. at 95.) Absent any allegation that the retention of data in the billing or management systems violates the Cable Act, we agree with the district court that the converter boxes contain no personally identifiable information and Comcast's privacy notice to subscribers adequately states its billing information policies. Because we conclude the converter boxes contain no personally identifiable information, we need not consider whether Comcast retained such information longer than otherwise necessary. *See* 47 U.S.C. § 551(e).

2.     Dismissal of State Law Claims

With regard to Pruitts' assertion that the district court erroneously dismissed their state law contract claims, we find it to be without merit. When the district court correctly dismisses a plaintiff's federal law claims, we review its decision to refuse to exercise supplemental jurisdiction over that plaintiff's state law claims for an abuse of discretion. *See* 28 U.S.C. § 1367(c)(3); *Gold v. Local 7 United Food & Commercial Workers Union*, 159 F.3d 1307, 1310 (10th Cir. 1998), *overruled on other grounds by Styskal v. Weld County Comm'rs.*, 365 F.3d 855 (10th Cir. 2004). While

the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that derive from a common nucleus of operative fact, . . . district courts are statutorily authorized

to decline supplemental jurisdiction over a state law claim if

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Gold*, 159 F.3d at 1310 (quotations and citations omitted); *see* 28 U.S.C. § 1367(a).  The district court's actions were clearly authorized under § 1367(c)(3).

For the foregoing reasons, the district court's judgment in favor of Comcast is AFFIRMED.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge