**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 11, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DAVID JAMES CROSBY,

          Plaintiff-Appellee,

    v.

MARARET HEIL, J.D. SCOLLARD,
CHRISTINE TYLER, CHRISTINA
MARQUEZ, RICH LINS, BURL
McCULLAR, JAYLYNNE KOCH,
SAMUEL DUNLAP, and CAPTAIN
CRISTELLI,

          Defendants-Appellants.

No. 12-1136

(D. of Colo.)

(D.C. No. 1:10-CV-00951-WJM-MEH)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.[**]

---

David James Crosby, a Colorado state prisoner proceeding pro se, appeals

an order of the district court granting summary judgment in favor of the

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

defendants, who are employees of the Colorado Department of Corrections.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM.

## I. Background

Crosby was convicted in 1994 of two counts of first-degree sexual assault and sentenced to 30 years' imprisonment. While in prison, Crosby voluntarily participated in sex offender treatment for a number of years.[1] He completed Phase I of treatment and was enrolled in Phase II at the Arrowhead Correctional Center (ACC) at the time of the incidents at issue here.

In February 2009, Crosby complained to ACC's kitchen supervisor, Captain Cristelli, about receiving insufficient food. Shortly thereafter, Crosby was questioned during group therapy about statements he made to prison officials minimizing the severity of his crime.[2] Crosby was then placed on increasingly strict probationary status in the sex offender treatment program and required to complete remedial assignments. Based on these actions, he filed an administrative complaint in August 2009. He was terminated from the treatment program in September 2009, after a hearing.

---

[1] Crosby was not sentenced pursuant to the Colorado Sex Offender Lifetime Supervision Act, which requires certain sex offenders to participate in therapy while incarcerated. *See* Colo. Rev. Stat. § 18-1.3-1004(3).

[2] Crosby allegedly expressed frustration with his confinement, stating that others who had committed more serious crimes had been released on parole before him and that he was in prison too long for his crime.

At the same time Crosby left the program, he was transferred to the Fremont Correctional Facility (FCF), as routinely occurred to inmates dropped from the program. Crosby was also given the opportunity to apply for readmission to the sex offender treatment program at a later time.

Crosby then filed suit in federal district court under 42 U.S.C. § 1983, alleging the defendants violated his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights. He claimed the defendants terminated him from treatment and transferred him to FCF in retaliation for filing complaints and providing legal advice to other inmates.

After the defendants moved for summary judgment, the district court referred the motion to a magistrate judge, who recommended it be granted. The district court adopted the recommendation.

## II. Discussion

We construe Crosby's filings liberally as he is proceeding pro se. *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007). We discern him to claim the district court and magistrate judge committed the following errors: (1) misconstrued his retaliation claim by concluding Crosby received a negative treatment evaluation before he complained about ACC's food service rather than after; (2) misconstrued Crosby to claim he was terminated in retaliation only for his August 2009 administrative complaint, rather than for his food service complaint and for legal advice he gave other inmates; (3) ignored evidence that

-3-

Crosby was not terminated from sex offender treatment due to poor performance; (4) failed to find Crosby had a constitutionally protected interest in sex offender treatment even though his termination from treatment extends his incarceration and makes him ineligible for parole; (5) found the defendants did not violate Crosby's Fifth Amendment rights by forcing him to admit to statements he claims were false as a condition of remaining in therapy; (6) found the defendants' did not inflict cruel and unusual psychological injury on Crosby by making him redo therapy assignments; and (7) found Crosby failed to raise a conspiracy claim because he suffered no injury, when the evidence showed many injuries.

We agree with the magistrate judge's reasoning, which the district court adopted. Although Crosby identifies two errors in that analysis, neither undermines the district court's conclusion. First, the timing of his January 2009 treatment evaluation is not significant.[3] This evaluation gave Crosby a poor score for the category "Demonstrates problem-solving skills," with a handwritten note stating "disengage –> legal pursuits." R., Vol. I at 42. Crosby argues this proves he was retaliated against. The magistrate judge concluded this evaluation

---

[3] The district court concluded Crosby did not object to the magistrate judge's finding with regard to the timing of this evaluation. But Crosby did argue in his objections that the evaluation was likely written after his food service complaint. Although it is not clear this is sufficient to preserve the objection, *see Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (discussing the firm waiver rule), we assume for purposes of this appeal that it is.

occurred in January, prior to Crosby's food service complaint, and could not have been retaliation for the complaint.

Crosby may be correct that this evaluation was written after his food service complaint. Although it is the January 2009 evaluation, it is signed and dated February 11, 2009, which is after Crosby complained about ACC's food service on February 5. *Id.* at 41. It is not clear the evaluation actually was drafted on this date, but even if it was drafted after February 5th, this does not show the evaluation was retaliatory.

> To allege retaliation, a plaintiff must show:
>
> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

Crosby claims that, by the time this evaluation was conducted, he had engaged in two constitutionally protected activities—providing legal advice to other inmates and complaining about the food service at ACC. Although giving legal advice to prisoners is not a constitutionally protected activity, *see Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998), Crosby's food-service complaint likely satisfies our first amendment jurisprudence. *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1205 (10th Cir. 2007).

But receiving a low score on one category in a multipart evaluation would not be sufficient to chill a person of ordinary firmness from continuing to engage in a protected activity. Even if we assume "disengage –> legal pursuits" indicates disapproval of Crosby's food-service grievance, it only pertains to one category of many. Crosby received low scores in other categories, and he does not argue these scores were retaliation for his legal activities. For example, he received a low score for "Demonstrates social skills," with a note stating "patronizing/condescending." R., Vol. I at 42. He also received high scores in some categories.

The record does not indicate how much Crosby's low score in this single category affected his overall evaluation, or even whether the evaluation was positive or negative.[4] Even if the evaluation was negative and was entirely motivated by retaliation, it would not deter someone of ordinary firmness from filing administrative complaints because Crosby identifies no negative consequences flowing from this evaluation. He was not placed on probation until one month later, as a result of his behavior during a group therapy session. He was not terminated from therapy until September, after many other intervening steps. So even if Crosby's evaluation occurred before his food service complaint

_____

[4] The evaluation gave Crosby an overall participation score of 1, a treatment progress score of 3, and a concept group score of 2. R., Vol. I at 41. There is no scale for these scores, so it is not clear whether a higher or lower score is better, though higher scores are worse in the individual categories. *See id.* at 42. It is also not clear how the three overall scores are weighted.

rather than after, it still does not amount to retaliation. *See Rocha v. Zavaras*, 443 F. App'x 316, 318–19 (10th Cir. 2011) (finding that receiving a poor work evaluation after complaining about prison kitchen staff would not deter a person of ordinary firmness from exercising constitutional rights).

Second, Crosby alleges the district court improperly weighed evidence by discounting or ignoring evidence supporting his claim that he was not terminated from treatment due to his poor performance. Crosby's evidence consists of three affidavits from patients in the group therapy meeting where Crosby was asked about statements minimizing his crime. The affidavits state that Crosby was not defensive during this meeting as the defendants claimed. Crosby's behavior during the meeting led to his being placed on probation in the treatment program. The magistrate judge did not mention these affidavits in his recommendation, nor did the district court, despite Crosby's objection.

A court is not to weigh conflicting evidence or make credibility determinations when ruling on a summary judgment motion. *Jones v. Barnhart*, 349 F.3d 1260, 1265 (10th Cir. 2003). But even if there is a dispute about an issue of fact, this does not preclude a ruling on a summary judgment motion so long as the fact is not material. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Even construing the disputed evidence about the March 2009 meeting in Crosby's favor and assuming that he was not defensive, there is no dispute that he made statements minimizing his crime and performed poorly in treatment in other

ways, such as by failing to complete treatment assignments in a satisfactory manner. So even if Crosby was not defensive during the March 2009 meeting, there is still considerable evidence that he was terminated due to his poor performance in the treatment program rather than in retaliation for his complaints.

As for the remaining errors Crosby asserts on appeal, his arguments are unpersuasive. The magistrate judge construed Crosby to complain of retaliation stemming from his legal advice to inmates, his food service complaint, and his August 2009 administrative complaint. The magistrate judge also correctly found that although it may be more difficult for Crosby to receive parole after his termination, he is still eligible for parole.

And it does not change the outcome if the magistrate judge failed to credit evidence showing Crosby is earning good-time credits at a lower rate after his termination, when his sex offender sub-classification was lowered. Under Colorado law, awards of good-time credits based on sex offender sub-classification are discretionary, and inmates have no protected liberty interest in discretionary good-time credits. *See Fogle v. Pierson*, 435 F.3d 1252, 1262 (10th Cir. 2006); *Hubler v. Lander*, 413 F. App'x 81, 82–83 (10th Cir. 2011).

As for Crosby's Fifth Amendment claim, the magistrate judge noted that requiring an inmate to admit to thoughts and feelings for therapeutic purposes does not violate the Fifth Amendment. *See McKune v. Lile*, 536 U.S. 24, 37–38 (2002); *Wirsching v. Colorado*, 360 F.3d 1191, 1193–94 (10th Cir. 2004). Crosby

-8-

argues he lost his parole eligibility as a result of his compelled admissions, a consequence outside the scope of therapy. But as the magistrate judge found, Crosby is still eligible for parole, even he if he less likely to receive it.

The magistrate judge reasoned Crosby's Eighth Amendment claim failed because he voluntarily participated in treatment. The only consequence of Crosby's failure to comply with the defendants' demands was termination from treatment, which does not support an Eighth Amendment claim absent a serious medical need for treatment. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Hunt v. Colo. Dept. of Corr.*, 194 F. App'x 492, 495 (10th Cir. 2006).

Finally, the magistrate judge properly disposed of Crosby's conspiracy claim by noting that although the defendants acted in concert to provide Crosby treatment, Crosby provided no evidence showing their purpose in doing so was to deprive him of constitutional rights. *See Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990). On appeal, Crosby argues the conspiracy deprived him of rights, but still provides no evidence the defendants intended to do so.

We agree with the magistrate judge's analysis of these claims.

## III.  Conclusion

Accordingly, we AFFIRM for substantially the same reasons as provided by

the district court and the magistrate judge. Appellant is reminded to continue making partial payments until the appellate filing fee is paid in full.

Entered for the Court,

Timothy M. Tymkovich
Circuit Judge