FILED
United States Court of Appeals
Tenth Circuit

April 18, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

YÉTONGBÉ S. AGASSOUNON,

     Plaintiff - Appellant,

v.

JEPPESEN SANDERSON, INC., a Boeing
company,

    Defendant - Appellee.

No. 16-1295
(D.C. No. 1:15-CV-00876-CMA-NYW)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **McKAY**, and **MORITZ**, Circuit Judges.
_____

Plaintiff Yétongbé Agassounon filed this suit against his former employer,

Defendant Jeppesen Sanderson, Inc., after he was laid off as part of a company-wide

reduction in force (RIF). Plaintiff alleges that Defendant discriminated against him on

the basis of race, color, and national origin in violation of Title VII of the Civil Rights

Act of 1964 and the Colorado Anti-Discrimination Act (CADA), and retaliated against

---

[*] Neither party has requested oral argument. After examining the briefs and
appellate record, this panel agrees that oral argument would not materially assist in the
determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The
case is therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

him for filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).  The district court granted summary judgment for Defendant and Plaintiff appealed.  We affirm.

Plaintiff, who is black and was born in Benin, worked for Defendant from 2008 to 2013 as a technical support specialist.  He alleges that, between 2012 and 2013, one white coworker told him he was a "communist"; another told him he was a "stupid co-worker" and refused to sit next to him because his accent would "disturb" the coworker and because he "stunk"; a third coworker corrected his grammar during an online chat discussion (to which Plaintiff responded "lol . . . .  corrected"); and he was called a "monkey" by two coworkers who told him to "go back to the jungle in Africa."  (Order at 12–13.)  Plaintiff alleges to have reported some of these comments to his supervisor. And in May 2013, Plaintiff filed a charge of discrimination with the EEOC.

Plaintiff also alleges that at some point during his employment (he could not recall when), he overheard a telephone conversation between an HR representative and his supervisor of four years during which the HR rep said, "You are doing a great job . . . . Try to create more incident[s] on him so we can get away from him."  (Order at 13.)

In August 2013, after several years of well-documented performance issues, Plaintiff was fired as part of a RIF.  In determining which employees would be subject to the RIF, employees were rated on a scale of one ("marginal") to four ("exceptional") in five categories.  Plaintiff received a score of one in each of the five categories. Consequently, Plaintiff and the other lowest-ranking employee in his group, a white woman, were fired.  Several white employees were retained.

"We review a summary judgment grant de novo and apply the same legal standard used by the district court." *Jones v. Barnhart*, 349 F.3d 1260, 1265 (10th Cir. 2003). Accordingly, we "view all of the facts in the light most favorable to the non-movant and draw all reasonable inferences from the record in favor of the non-moving party." *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1220 (10th Cir. 2015). "Even so, the non-movant must still identify sufficient evidence requiring submission to the jury to survive summary judgment." *Id.* (internal quotation marks omitted). Summary judgment is appropriate if "the evidence reveals no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Id.* "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way, and an issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.* (internal brackets and quotation marks omitted).

Plaintiff has asserted a number of claims under CADA as well as Title VII. CADA discrimination and retaliation claims are subject to the same legal standards as Title VII claims. *See Johnson v. Weld County*, 594 F.3d 1202, 1219 n.11 (10th Cir. 2010); *Colo. Civil Rights Comm'n v. Big O Tires, Inc.*, 940 P.2d 397, 400 (Colo. 1997). Because "they rise or fall together," *Johnson*, 594 F.3d at 1219 n.11 (internal quotation marks omitted), we analyze the corresponding statutory claims together.

First, Plaintiff alleges that Defendant's failure to promote him was based on racial, color, or national origin discrimination. Without direct evidence of discrimination, Plaintiff must establish a prima facie case for a failure-to-promote claim by demonstrating (1) he was a member of a protected class; (2) he applied for and was

qualified for the position; (3) despite being qualified he was rejected; and (4) after he was rejected, the position was filled. *Jones*, 349 F.3d at 1266.

The district court granted summary judgment on this claim because Plaintiff "provided no evidence as to (1) the specific position he desired, (2) the qualifications needed for that position, (3) his qualifications; (4) whether he needed to apply for the position or whether he would have been automatically considered for it by [Defendant]; or (5) the qualifications of the individual who was actually hired for the position." (Order at 17.)

On appeal, Plaintiff does not point to anything in the record about his qualifications *for that position*. He does not say whether he even applied for the position or whether he would have been automatically considered for it by Defendant. Consequently, we agree with the district court that Plaintiff has failed to establish a prima facie case of discrimination based on Defendant's failure to promote him.

Next, Plaintiff claims he had experienced a hostile work environment. To avoid summary judgment at the prima facie stage, "a plaintiff must present evidence that creates a genuine dispute of material fact as to whether the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Lounds*, 812 F.3d at 1222 (internal brackets and quotation marks omitted). The work environment must be subjectively *and* objectively hostile or abusive. *Id.* Generally, the "plaintiff must show more than a few isolated incidents of racial enmity." *Id.* at 1223. "Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." *Id.*

- 4 -

Having considered all of the facts in the light most favorable to Plaintiff, we agree with the district court that "a jury could not reasonably conclude that [the workplace] was permeated with discriminatory intimidation, ridicule, and insult that was severe enough to alter the conditions of Plaintiff's employment." (Order at 30.) The several alleged comments made to Plaintiff by his coworkers, though offensive and inappropriate, were not pervasive enough to give rise to a hostile work environment claim.

Next, Plaintiff claims that Defendant selected him for the RIF because of his race, color, and national origin. To establish a prima facie case of discrimination in a RIF, a plaintiff must show (1) he was within a protected group; (2) he was doing satisfactory work; (3) he was discharged despite the adequacy of his work; and (4) there is some evidence the employer intended to discriminate against him in reaching its RIF decision. *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006). "This fourth element may be established through circumstantial evidence that the plaintiff was treated less favorably than [non-members of the protected group] during the RIF." *Id*. at 1193 (internal brackets and quotation marks omitted). "If Plaintiff establishes a prima facie case, the burden of production shifts to the Defendant to rebut this presumption of discriminatory intent by asserting a legitimate, nondiscriminatory reason for the employment decision." *Id.* "Once the Defendant meets this burden of production, the burden shifts back again to the plaintiff to show that the defendant's proffered reasons were a pretext for discrimination." *Id.* (internal quotation marks omitted).

Below, the district court held that Plaintiff could establish a prima facie case of discrimination and that Defendant advanced a legitimate, nondiscriminatory reason for its

employment decision.  Plaintiff then had the burden to identify evidence from which a reasonable jury could conclude that the proffered reason was actually a pretext for unlawful discrimination.  This he did not do.

"In a RIF case, a plaintiff can demonstrate pretext in three principal ways." *Id.*  A plaintiff "can present evidence that (1) his own termination does not accord with the RIF criteria, (2) Defendant's RIF criteria were deliberately falsified or manipulated in order to terminate him, or (3) that the RIF generally was pretextual." *Id.*  This list is nonexclusive.  *See Conroy v. Vilsack*, 707 F.3d 1163, 1172 (10th Cir. 2013) ("Pretext can be shown in a variety of ways. . ." (brackets omitted)).

On appeal, Plaintiff has gone with option number two.  He argues that "the evidence is in material dispute as to whether or not" his supervisor and coworkers "deliberately manipulated [his] evaluations" to get Plaintiff fired.  (Appellant's Op. Br. at 18.)  Notably, he does *not* argue that his supervisor was "'duped' in discriminating against him"—instead, he claims, his supervisor "was a participant."  (*Id.* at 18–19.)

But Plaintiff has not provided sufficient evidence of pretext.  Plaintiff alleges his coworkers made a few discriminatory comments and that his supervisor was made aware of such comments.  But he has not provided evidence showing that any alleged discriminatory animus held by his coworkers impacted his supervisor's decision to assign Plaintiff the lowest rating in his department during the RIF.

Plaintiff also alleges that, at some point, he was in a conference room with his supervisor who was on the phone with an HR representative.  According to Plaintiff, he overheard the HR rep, unaware that Plaintiff was in the room, say:  "You are doing a great

- 6 -

job . . . . Try to create more incident[s] on him so we can get away from him."
(Appellant's Op. Br. at 10.) The problem for Plaintiff is that he has not provided us with
*any* context. He does not tell us how he knew the HR rep was referring to the Plaintiff
when she said "him," though that is certainly the implication Plaintiff would like us to
draw. For instance, Plaintiff does not say why he was in the room or why his supervisor
and the HR rep were on the phone. He does not tell us whether he had been referenced,
implicitly or explicitly, in the phone conversation up to that point. Though Plaintiff was
allegedly present in the room, he does not say anything about his supervisor's response,
verbal or nonverbal. In fact, Plaintiff has not relayed *anything else* from or about that
conversation beyond the snippet quoted above.

On top of that, Plaintiff does not point to evidence the HR rep had influence over
his supervisor; indeed, he acknowledges his supervisor was solely responsible for the low
rating that lead to his termination. Moreover, he does not link up the "create[d]"
incidents and his low ratings in "Technical Skills," "Analytical Skills," "Customer
Focus," "Teamwork," and "Individual Impact," which resulted in his termination during
the RIF. And he has not pointed to any other evidence that might establish pretext.
Accordingly, Plaintiff has not met his burden, and Defendant is entitled to summary
judgment on this claim.

Finally, Plaintiff claims he was fired in retaliation for reporting his coworkers and
for filing a charge of discrimination with the EEOC. "To prevail on a Title VII
retaliation claim, a plaintiff must establish that retaliation played a part in the
employment decision." *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016)

(brackets omitted). "[I]n the absence of direct evidence, a plaintiff may proceed under the burden-shifting framework established in *McDonnell Douglas*." *Id.* "Under this framework, the plaintiff must first establish a prima facie case of retaliation." *Id.* "Once the plaintiff successfully asserts a prima facie retaliation case, the burden shifts to the defendant (i.e., employer) to come forward with a legitimate, non-retaliatory rationale for the adverse employment action. If the defendant does so, the plaintiff must show that the defendant's proffered rationale is pretextual." *Id.*

Because Plaintiff has failed to meet his burden of establishing that Defendant's proffered reason for terminating Plaintiff's employment pursuant to the RIF was pretextual, *see supra*, Defendant is entitled to summary judgment on this claim as well.

The district court's judgment is **AFFIRMED**.

Entered for the Court


Monroe G. McKay
Circuit Judge