**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 25 2005**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

CHERYL E. CARTER,

　　　Plaintiff-Appellant,

v.

NORMAN Y. MINETA, Secretary,
United States Department of
Transportation,

　　　Defendant-Appellee.

No. 03-1433
(D.C. No. 02-WM-535 (OES))
(D. Colo.)

---

ORDER AND JUDGMENT *

---

Before **HARTZ** , **McKAY** , and **PORFILIO** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Cheryl E. Carter, proceeding pro se, appeals the district court's grant of summary judgment on her claims of employment discrimination brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e through 2000e-17. In her complaint she alleged that certain actions of her superiors and supervisors constituted both disparate-treatment and disparate-impact discrimination based on her gender, created a hostile work environment, and were conducted in retaliation for activity protected by Title VII. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Background

Plaintiff is an employee of the United States Department of Transportation, Federal Aviation Agency (FAA), and works at Denver International Airport (DIA). She has been employed since 1994 as an Airways Systems Specialist at a grade 12. In November 1998 the FAA issued a vacancy announcement for a Maintenance Control Center (MCC) Specialist, posted as a grade 13. Plaintiff submitted her application and was determined to be qualified for the position.

As part of its selection procedure, the FAA used a panel to rate the applications of the qualified candidates and make a recommendation. The recommendation panel for the MCC Specialist position consisted of three women and two men. The panel members scored each candidate on the basis of three criteria applied to the written information on the candidate and responses to five

interview questions. The panel then made a final recommendation to the selecting official based on the total scores. The panel ranked Plaintiff third out of the seven candidates and recommended Tom Suzuki, the candidate who scored the highest, for the position. Gary Mattson, the selecting official, chose Suzuki for the position. In his declaration Mattson provided a detailed explanation of the factors he considered in hiring Suzuki over Plaintiff.

On March 22, 1999, Plaintiff filed a formal EEO complaint with the agency in which she alleged that she was discriminated against on the basis of her sex in the hiring of Suzuki. *See* 29 C.F.R. § 1614.106(a). Plaintiff attached several pages of "notes" to her complaint, claiming that other women had also been discriminated against on the basis of their sex and that over a five-year period she had been kept from promotions and job details that would have enhanced her career.

On or about February 5, 2001, Rick Silva, Plaintiff's immediate supervisor, received an e-mail message from the FAA's attorney advising him and others that they would be required to testify at an upcoming hearing on Plaintiff's EEO complaint. Silva stated that he did not read the message until the following week.

On February 9, Silva received a report of water dripping on sensitive radar equipment at the DIA control tower. Silva, whose major job responsibilities included providing scheduled, unscheduled, and emergency maintenance at the

control tower, paged Plaintiff and Steve Lind to report to the control tower and assess the situation. Plaintiff, whose admitted area of responsibility included the control tower, responded to the page first, and Silva directed her to proceed to the control tower. When she arrived at the control tower, Plaintiff reported to Silva that the roof was still leaking and water was dripping on the equipment.

Silva attempted to find a maintenance person to repair the roof, but was unsuccessful. He then directed Plaintiff and Lind, who by then had arrived at the control tower, to make temporary repairs to the roof to protect the equipment. Plaintiff protested, stating that the job was one for the roofing company or the field maintenance personnel, and not part of her job description. She later described the roof repair assignment as dangerous and "extremely tasking [sic] physically." R. Doc. 25, tab A-26 at 12 of 15. She conceded that she received assistance from an environmental technician for the last two and one-half hours of the repair job and that she received hazard pay for her work. When Silva asked Plaintiff to take care of the roof leak, he did not mention her EEO complaint. Nor did Plaintiff suggest to Silva that he was ordering her to make the repairs because of her EEO complaint.

Shortly after the roof incident, Plaintiff filed several union grievances related to the task. The union grievances concerned the alleged unsafe working conditions, Silva's directions that Plaintiff perform the duties of a roofer, and

-4-

Silva's violation of a union contract requirement that before a meeting the employee must be notified in advance of the subject matter of certain agenda items.

In April 2001 Plaintiff filed with the agency another EEO complaint alleging Silva retaliated against her. In May an EEOC administrative law judge held a hearing on Plaintiff's complaint, although it is not clear whether the hearing covered both the discrimination and retaliation claims. Plaintiff was issued right-to-sue letters on both her claims in December 2001, and she filed her federal district court complaint in March 2002. As noted, her complaint raised four theories of discrimination: disparate treatment, disparate impact, hostile work environment, and retaliation.

Standard of Review on Summary Judgment

> Our standard of review is well established:
>
> We review the district court's grant of summary judgment de novo, considering the evidence in the light most favorable to the appellant. We affirm unless the appellant points to evidence in the record establishing a genuine issue of material fact. In other words, if a jury could not render a verdict in favor of the plaintiff even if it viewed all the evidence presented on the summary judgment motion in the light most favorable to the plaintiff, then the court should grant the defendant summary judgment.

*Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1209 (10th Cir. 2003) (internal citations omitted). In applying this standard, all inferences arising from the record must "be drawn and indulged in favor of the party opposing summary

judgment." *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1216 (10th Cir. 2003) (internal quotation marks omitted). "[O]ur role is simply to determine whether the evidence proffered by the plaintiff would be sufficient if believed by the ultimate factfinder, to sustain her claim." *Id.* (internal quotation marks omitted). Nonetheless, the plaintiff "must establish, at a minimum, an inference of the existence of each element essential to the case." *Croy v. Cobe Labs., Inc.*, 345 F.3d 1199, 1201 (10th Cir. 2003) (internal quotation marks omitted). Ultimately, the defendant "is entitled to summary judgment [if] 'the record taken as a whole could not lead a rational trier of fact to find for the [plaintiff].'" *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Although we recognize that Plaintiff is proceeding pro se, she is nonetheless obligated to follow the procedural rules governing litigants, *see Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994), including the requirement to furnish "citations to the authorities and parts of the record on which [she] relies." Fed. R. App. P. 28(a)(9)(A). These references should also be by document number and page number within the document. 10th Cir. R. 28.1(B). It is not this court's "burden to hunt . . . down pertinent materials." *Rios v. Bigler*, 67 F.3d 1543, 1553 (10th Cir. 1995). Rather, as the appellant, Plaintiff must supply materials sufficient for this court's consideration and resolution of

-6-

appellate issues.  *See Morrison, Knudsen Corp. v. Fireman's Fund Ins. Co.*    , 175 F.3d 1221, 1237-38 n.15 (10th Cir. 1999).

Disparate Treatment

"A disparate treatment claim exists when an employer treats an individual less favorably than others because of his or her protected status."        *Faulkner v. Super Valu Stores, Inc.*   , 3 F.3d 1419, 1424 (10th Cir. 1993).  "[D]isparate treatment is a form of intentional discrimination,"      *id.*, which can be proved through either direct or indirect evidence,     *see Amro v. Boeing Co.*   , 232 F.3d 790, 796 (10th Cir. 2000).  "Where there is inadequate direct evidence of discrimination (e.g., oral or written statements on the part of a defendant showing a discriminatory motivation), the United States Supreme Court has established a three-step burden-shifting format whereby [a] plaintiff may prove [her] case through indirect, i.e., circumstantial, evidence."      *Elmore v. Capstan, Inc.*   , 58 F.3d 525, 529 (10th Cir. 1995).  This burden-shifting format, set forth in        *McDonnell Douglas v. Green*  , 411 U.S. 792, 801-05 (1973), required Plaintiff to bear the initial burden of establishing a prima     facie case of discrimination.     *Id.* at 802.

To establish a prima facie case of disparate treatment in Defendant's failure to promote her, Plaintiff had to show (1) that she was a member of a protected class; (2) that she was qualified for the position she applied for; (3) that she was rejected; and (4) that after she was rejected, the position was either filled by

someone not in the protected class or remained available. *See Amro*, 232 F.3d at 796. The district court determined, and Defendant does not dispute, that Plaintiff "established a *prima facie* case of gender discrimination on her non-selection for the position of MCC Specialist," Aplee. Br. at 13.

At this point in the *McDonnell Douglas* analysis, Defendant was obligated "to articulate a legitimate, nondiscriminatory reason for its employment action" or, in other words, "explain its actions against the plaintiff in terms that are not facially prohibited by Title VII." *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003) (internal quotation marks omitted). Defendant did provide a legitimate explanation for its decision to hire someone other than Plaintiff for the MCC Specialist position. Specifically, the recommendation panel scored and ranked the qualified applicants according to a series of written criteria and responses to interview questions, and recommended Suzuki for the position based on the total scores. Mattson, the selecting official, considered the panel's recommendation and made his own assessment. He, too, selected Suzuki as the best qualified candidate. Because Defendant's explanation was not facially prohibited by Title VII, Plaintiff then had to show at the third step of the analysis that Defendant's proffered explanation was "pretextual or [gender] motivated," *Jones*, 349 F.3d at 1266. Summary judgment at this point was "warranted only if [Plaintiff] . . . failed to produce any evidence from which a reasonable inference

could be drawn that [Defendant's] proffered reasons were pretextual." *Id.* (internal quotation marks omitted) . At this third step, the district court determined that Plaintiff had produced no admissible evidence to show that Defendant's reasons for selecting Suzuki were pretextual. We agree.

Plaintiff's primary dissatisfaction with the selection process focuses on the recommendation of panel members, who Plaintiff claims were biased, coerced, and incompetent. These are conclusory and speculative allegations, however, as is Plaintiff's assertion that "she was the most experienced and best trained candidate for the promotion to the MCC position." Aplt. Br. at 15.

Plaintiff argues that some members of the recommendation panel "scratched out and marked lower" her scores and also "scratched out and marked higher" Suzuki's scores. *Id.* at 21. We note that the record supports this particular observation; some scores were indeed changed by individual panel members as part of the scoring process. But the record does not show that only Plaintiff's scores were decreased while Suzuki's were always increased; Suzuki's scores also were lowered on two occasions. More importantly, however, even assuming that the scratched-out scores were the true scores, (and further assuming that the second-place candidate's scores remained the same), Suzuki would still have scored 30 points more than Plaintiff, and Plaintiff would have remained in third place. (As presented to the selecting official, Suzuki's score was 365, the

second-place candidate's score was 350, and Plaintiff's score was 321. If the scratched-out scores had been tallied instead, Suzuki would have scored 359 and Plaintiff would have scored 329.)

Panelists Dale Campbell and Will Medina stated they did not consider gender in ranking Plaintiff's application. Medina further stated that he heard nothing during the review process even suggesting Plaintiff's gender was considered. Panelist Janet Maysfield testified she was not "steered" to select Suzuki and did not remember being "coerced" into changing her scores. She also remembered the process as being fair. She testified that she did not discriminate against Plaintiff on the basis of sex. Panelist Nancy Bronson stated in her declaration that the panel did not discuss gender when considering the applications and that there was nothing about the process that suggested to her that any members were biased either against Plaintiff or for Suzuki. Bronson's own recommendation was based on her belief that Suzuki had the best experience and was the most qualified. (Plaintiff states in her brief, without any supporting citation, that Nancy Bronson "testifies after discussion with other panel members she lowered or raised her score as suggested by other panel members." Aplt. Br. at 17. The record reflects, however, that Bronson did not change the scores she gave Plaintiff. Bronson did, however, lower one of Suzuki's scores.) The remaining female panelist, Sara Earwood, testified that Suzuki was the best

candidate because he scored the highest. She further testified that she did not discriminate against any of the women candidates and that she had not seen anyone else discriminate against either women in general or Plaintiff in particular. She also testified that no one on the panel had "steer[ed]" other panel members. R. Doc. 25, tab A-10 at Tr. 209.

In sum, Plaintiff's arguments that she was the most qualified candidate are no more than her personal opinion that her particular experience should outweigh the experience of Suzuki–experience that the panel members and the selecting official found to be more valuable. "However, an employee's own opinions about [her] . . . qualifications [do not] give rise to a material factual dispute." *Simms v. Okla. ex rel. Dept. of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1329 (10th Cir. 1999) (internal quotation marks omitted; alteration in original). Moreover, this is not a case in which "the facts assure us that the plaintiff [was] better qualified than the other candidates for the position," such that we might be willing to infer pretext from her non-selection. *Jones*, 349 F.3d at 1267.

"When assessing a contention of pretext, we examine the facts as they appear to the person making the decision to [promote] the plaintiff." *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001) (internal quotation marks and brackets omitted). Because "our role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses

-11-

employers' business judgments[,] . . . we typically infer pretext in these contexts only when the criteria on which the employers ultimately rely are entirely subjective in nature." *Jones*, 349 F.3d at 1267-68 (internal quotation marks and brackets omitted). In the final analysis, it is not Plaintiff's perception of her qualifications but that of the managers that matter in determining pretext. *See Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996).

We agree with the district court that Plaintiff failed to establish pretext. The evidence she presented simply was "not sufficient to raise a doubt about Defendant's motivation." *Jones*, 349 F.3d at 1268 (internal quotation marks omitted).

Disparate Impact

On summary judgment Plaintiff bore the burden of establishing a prima facie case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). To establish her prima facie case of disparate impact, Plaintiff had to show "a specific identifiable employment practice or policy that caused a significant disparate impact on a protected group." *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1196 (10th Cir. 2000) (internal quotation marks omitted). Such a practice is one that is "fair in form, but discriminatory in operation." *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1312 (10th Cir. 1999) (internal quotation marks omitted), *overruled in part on other grounds by Nat'l*

*R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Unlike a disparate treatment claim, a claim of disparate impact "does not require a finding of intentional discrimination." *Ortega v. Safeway Stores, Inc.*, 943 F.2d 1230, 1242 (10th Cir. 1991). "The premise behind this approach 'is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination.'" *Faulkner*, 3 F.3d at 1428 (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 987 (1988)).

In her complaint Plaintiff alleged that Defendant's "subjective rating, interview and selection practice or procedure, as applied in Plaintiff's region of employment," acts to "disproportionately and negatively impact[] female applicants," particularly with respect to "promotional opportunities, details, career development, training, initial appointment to, and promotions within Plaintiff's region of employment with [Defendant]." R. Doc. 1 at 6. The district court ruled that Plaintiff failed to make a prima facie case on this claim.

On appeal Plaintiff asserts that (1) there are no female MCC Specialists, (2) there were seven candidates for the vacant MCC Specialist position, three of whom were women, (3) all the women were qualified, (4) Plaintiff's scores were "tampered with," i.e., lowered, and (5) another job vacancy had two male candidates and one female candidate, and a male candidate was "promoted above the female." Aplt. Br. at 20-21.

Plaintiff's use of her own experience plus one bare-bones anecdote cannot establish a prima facie case of disparate impact. As explained above, she has failed to show discrimination in her being denied the MCC Specialist position. And the skeletal description of another circumstance in which a male was selected over a female hardly suffices. Indeed, the mere fact that more men than women may be employed by the FAA is no more than a general assault on the gender composition of the workforce and thus is inadequate to support a case of disparate impact. *See Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656-57 (1989) ("Just as an employer cannot escape liability under Title VII by demonstrating that, 'at the bottom line,' his work force is [gender] balanced . . . , a Title VII plaintiff does not make out a cause of disparate impact simply by showing that, 'at the bottom line,' there is [gender] *imbalance* in the work force." (quoting *Connecticut v. Teal*, 457 U.S. 440, 450 (1982))).

Plaintiff failed to satisfy her burden of producing proper evidence that Defendant's "employment practice or policy caused a significant disparate impact on a protected group," here, women. *Ortega*, 943 F.2d at 1242. Summary judgment was therefore appropriate.

Hostile-Work-Environment Claim

The district court granted summary judgment on Plaintiff's hostile-work-environment claim because she failed to include it in either of her

EEO complaints and therefore failed to exhaust her EEO remedies with respect to the claim. "Exhaustion of administrative remedies is a 'jurisdictional prerequisite' to suit under Title VII." *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996). And it is Plaintiff's burden to establish the court's subject-matter jurisdiction. *See Southway v. Cent. Bank of Nigeria*, 328 F.3d 1267, 1274 (10th Cir. 2003).

On appeal Plaintiff argues that she did include a claim for hostile work environment in her EEO complaint. In particular, she contends that she "describe[d] humiliation and belittlement in her initial 'Complaint of Discrimination dated March 22, 1999,'" and she cites to "FAA ROI Exhibit A page 5, FAA ROI Exhibit F-a1 at page 9 & 10" in support of this contention. Aplt. Br. at 22. But we are unable to locate in the record on appeal either of these two exhibits or the depositions Plaintiff cites in support of her additional contention that her supervisor, Ron Silva, "testified to a hostile work environment." *Id.* We therefore disregard these contentions.

Plaintiff did not include hostile work environment in the list of claims she set out in her initial EEO complaint. She listed as her three "complaints" sex discrimination against herself, sex discrimination against other women, and attempting to keep other women from serving details to enhance their careers. Nor did she adequately describe a hostile-environment claim in the narrative

-15-

portion of her EEO complaint.    *See Annett v. Univ. of Kan.*  , 371 F.3d 1233, 1238 (10th Cir. 2004);   *Gunnell v. Utah Valley State Coll.*   , 152 F.3d 1253, 1260 (10th Cir. 1998).

The district court correctly determined that Plaintiff failed to exhaust her hostile-work-environment claim.  The court should have dismissed this claim for lack of subject-matter jurisdiction,    *see, e.g., Khader v. Aspin*  , 1 F.3d 968, 971 (10th Cir. 1993), and we will modify its judgment accordingly.

Retaliation Claim

Finally, Plaintiff alleged that Defendant retaliated against her when Silva ordered her to perform the roof repair job on the air traffic control tower in bad weather.  This work order, she claimed, was in retaliation for Silva's having been notified to appear at Plaintiff's EEO hearing.

To establish a prima facie case of retaliation, Plaintiff had to show that (1) she engaged in protected activity, (2) Defendant took an adverse employment action against her, and (3) there existed a causal connection between Plaintiff's protected activity and the adverse action.    *Tran v. Trs. of State Colls. in Colo.*   , 355 F.3d 1263, 1266 (10th Cir. 2004).  Although we "liberally define an adverse employment action, its existence is determined on a case by case basis and does not extend to a mere inconvenience or an alteration of job responsibilities." *Wells*, 325 F.3d at 1212-13 (internal quotation marks omitted).  Rather, "the

employer's conduct must be materially adverse to the employee's job status," which means the conduct must be "a significant change in employment status, such as . . . firing, failure to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id*. at 1213 (internal quotation marks omitted).

By Plaintiff's own account, the roof repair task took a little over seven hours from the time Silva first paged Plaintiff to inspect the roof leak to when she completed the roof patch. *See Wells*, 325 F.3d at 1214 (assignment was "for too brief a period to rise to the level of an adverse action"). Moreover, she admits that the control tower was "[her] area of responsibility." R. Doc. 25, tab A-21 at Tr. 143. Plaintiff did not claim, nor does the record reflect, that she was ever asked to perform a similar job again. In her brief Plaintiff offers no further explanation as to how the roof repair incident adversely affected her employment. No argument is made that this one-time assignment altered her regular responsibilities, salary, or benefits. *See Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998). Although the roof-repair experience was no doubt unpleasant, Plaintiff has failed to present evidence that any expansion of her job-description duties was "severe or prolonged enough to constitute a 'materially adverse' [change] in job responsibilities" and thus amounted to an adverse action.

*Wells*, 325 F.3d at 1214. Accordingly, Plaintiff failed to establish a prima facie case of retaliation.

Other Arguments

We briefly address the relevant portions of Plaintiff's remaining arguments. We repeat our earlier admonition that we will neither craft Plaintiff's arguments for her, nor search the record for support of her arguments. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("[W]e, like the district courts, have a limited and neutral role in the adversarial process, and are wary of becoming advocates who comb the record of previously available evidence and make a party's case for [her].").

First, we note that, contrary to Plaintiff's assertion, the district court did not disqualify her "entire" response brief. Aplt. Br. at 11. Rather, the court disregarded the statements that were unsupported or noncompliant with Fed. R. Civ. P. 56(e); the court accepted Plaintiff's alleged facts to the extent they were "relevant and supported by proper, identifiable evidence." R. Doc. 31 at 2 n.1. In this, the court did not err.

Plaintiff also complains that the district court improperly expressed its agreement with Defendant that the "'failure by FAA officials to maintain or provide Affirmative Action training to employees [under 29 C.F.R. § 1614] . . .

even if true is not relevant.'" Aplt. Br. at 12 (quoting R. Doc. 31 at 6) (bold type omitted). Because we agree with the district court, we reject this complaint. Plaintiff's references to "affirmative action" and "affirmative action plans" are not clear. The regulation she cites requires that federal agencies "maintain a continuing affirmative program to promote equal opportunity and to identify and eliminate discriminatory practices and policies." 29 C.F.R. § 1614.102(a). Plaintiff apparently believes that her gender entitles her to some sort of preferential hiring or promotion consideration, but in this she is mistaken. To the extent Plaintiff may be suggesting that the court's ruling indicated bias, we disagree.

Next, Plaintiff contends that Gary Mattson committed perjury in his testimony at the hearing on her EEO complaint. Plaintiff bases her claim on inconsistencies she sees between Mattson's hearing testimony and his subsequent deposition testimony concerning the existence of an affirmative action plan. Plaintiff fails, however, to explain the connection between the alleged inconsistencies and her claim that Defendant discriminated against her by hiring Suzuki. Plaintiff's allegations do not create an issue of fact barring summary judgment for Defendant. *See Matthiesen v. Banc One Mortgage Corp.*, 173 F.3d 1242, 1247 (10th Cir. 1999).

Plaintiff also argues that she is entitled to a jury trial under the Seventh Amendment to the Constitution. "The Seventh Amendment is not violated by proper entry of summary judgment, [however,] because such a ruling means that no triable issue exists to be submitted to a jury." *Shannon v. Graves*, 257 F.3d 1164, 1167 (10th Cir. 2001).

Plaintiff challenges the district court's rulings on her failure to present competent evidence to defeat Defendant's summary judgment motion. But Plaintiff's references in her brief merely repeat her claim that she was more qualified for the MCC Specialist position than was Suzuki. As we have said, an employee's opinion about her own qualifications does not give rise to a material factual dispute that will defeat summary judgment. *Simms*, 165 F.3d at 1329. Although Plaintiff contends that she was more qualified, there is objective evidence that Defendant believed Suzuki's experience made him the better candidate, and there is simply no evidence that the reasons given for Suzuki's selection were a pretext for discriminating against Plaintiff.

Plaintiff further contends that panel member Dale Campbell was biased and showed preferential treatment to male employees by sending them on career-enhancing details that were refused to Plaintiff. Plaintiff again, however, has failed to tie relevant facts, supported by specific record citations, to her legal contentions. *See Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024

-20-

(10th Cir. 1992) ("[S]ufficient evidence (pertinent to the material issue) must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein.").

Although in some instances Plaintiff does cite to transcripts and depositions to support her argument, many of the documents she cites are not in the record on appeal. For example, Plaintiff seeks to illustrate the alleged bias of Campbell by reciting that "FAA employee Julie St. George overheard Dale Campbell and she quoted '[h]e was making joking comments about [Plaintiff] being promoted.'" Aplt. Br. at 19. But the affidavit of Julie St. George that Plaintiff refers to is not in our record. Moreover, Campbell testified that he was not biased against Plaintiff and that he "would not have said something like that." R. Doc. 27, attach. 6, Tr. 188-89. Thus, all we have in support of this claim of bias is Plaintiff's wholly unsubstantiated allegation, which we cannot consider when reviewing this appeal. *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995).

Conclusion

We AFFIRM the district court's grant of summary judgment to Defendant on all claims except the claim for hostile work environment; we MODIFY the district court's judgment on the hostile-work-environment claim to reflect a DISMISSAL for lack of subject matter jurisdiction.

Entered for the Court


Harris L Hartz
Circuit Judge